**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JOHN RODNEY JOHNSON,

                Petitioner,

v.                                  CIVIL ACTION NO.   2:19-cv-00487

DONNIE AMES,

                Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Respondent Donnie Ames's Motion for Summary Judgment, (ECF No. 9), on Petitioner John Rodney Johnson's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, (ECF No. 2).   By Standing Order, this matter was referred to United States Magistrate Judge Cheryl A. Eifert for submission of proposed findings and a recommendation for disposition ("PF&R").   (ECF No. 3.)   On April 2, 2020, Magistrate Judge Eifert filed a PF&R, (ECF No. 19), recommending that this Court grant Respondent's Motion for Summary Judgment, dismiss Petitioner's Amended Petition for Writ of Habeas Corpus, and dismiss this matter from the Court's docket.   After an extension was granted, Petitioner filed an objection to the PF&R on May 8, 2020.   (ECF No. 22.)

Also pending before the Court is Petitioner's Motion for Supplemental Record, (ECF No. 23), which Petitioner filed on June 24, 2020.   This Court entered an order on July 21, 2020, (ECF No. 24), in which it directed Respondent to file a response to Petitioner's motion.   Respondent filed his response on July 31, 2020.   (ECF No. 25.)

For the reasons discussed herein, the Court **OVERRULES** Petitioner's objection, (ECF No. 22), **ADOPTS** the PF&R, (ECF No. 19), **DENIES** Petitioner's Amended Petition for a Writ of Habeas Corpus, (ECF No. 2), **DENIES** Petitioner's Motion for Supplemental Record, (ECF No. 23), and **DISMISSES** this action from the docket of the Court.

## I.   BACKGROUND

On March 12, 2004, Petitioner was convicted upon a jury verdict in the Circuit Court of Cabell County, West Virginia, for one count of murder in the first degree.   (ECF No. 9–5 at 54.) Thereafter, the trial court sentenced Petitioner to life in prison, without mercy.   (ECF No. 9–11 at 2–3.)

The complete factual and procedural history of Petitioner's direct appeal and habeas proceedings in state court, as well as a review of Petitioner's claims in his federal habeas petition are set forth in detail in the PF&R and need not be repeated here.   The Court will provide a discussion of any relevant facts from Petitioner's original criminal case as necessary throughout this opinion to resolve Petitioner's objections.   This § 2254 Petition claims the following grounds for relief:

1. Petitioner asserts prosecutorial misconduct based on racial, inflammatory, prejudicial, and improper comments that prejudiced the jury and violated Petitioner's due process rights.

2. Petitioner assets the trial court abused its discretion by allowing the State to introduce improper 404(b) character evidence, which was irrelevant, highly prejudicial, and improper.

3. Petitioner asserts the trial court violated his Fifth and Fourteenth Amendments rights to due process by providing a burden shifting jury instruction which shifted the burden of proof to Petitioner for malice and specific intent to kill.

4. Petitioner asserts the trial court abused its discretion by failing to remove an impartial juror and failed to set aside the verdict due to juror misconduct.

2

5.  Petitioner asserts the trial court abused its discretion and violated his rights by presenting Petitioner in restraints and prison attire at critical stages of the trial.

(ECF No. 2 at 7–11.)   The PF&R thoroughly analyzes each of Respondent's arguments contained within his motion for summary judgment and recommends this Court grant Respondent's Motion for Summary Judgment, (ECF No. 9); deny Petitioner's Petition for Writ of Habeas Corpus, (ECF No. 2); and dismiss this matter from the Court's docket.

## II.  STANDARD OF REVIEW

### A.  Review of Magistrate Judge's Findings and Recommendations

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).   However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, this Court need not conduct a de novo review when a plaintiff "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In reviewing those portions of the PF&R to which Plaintiff has objected, this Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### B.  Habeas Corpus Standard of Review

A federal court may grant habeas relief for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. §

2254(a).   "Therefore, when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review."   *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999), *aff'd*, 528 U.S. 225 (2000).

Section 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides for a deferential standard of review to be applied to any claim that was "adjudicated on the merits" in state court proceedings.   In such a case, a federal court may grant habeas relief only if the adjudication of the claim in state court

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) describes the standard of review to be applied to claims challenging how the state courts applied federal law.   "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts."   *Bell v. Cone*, 535 U.S. 685, 694 (2002).   "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case."   *Id.*   The latter inquiry focuses on whether the state court's application of clearly established federal law was "unreasonable," as distinguished from whether it was "correct."   *See Renico v. Lett*, 559 U.S. 766, 773 (2010); *Bell*, 535 U.S. at 694; *Williams v. Taylor*, 529 U.S. 362, 410 (2000).

Section 2254(d)(2) describes the standard to be applied to claims challenging how the state courts determined the facts.  "[A] determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "The phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion."  *Thomas v. Taylor*, 170 F.3d 466, 475 (4th Cir. 1999); *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011) (recognizing that § 2254(d) applies even if the state court issued a summary decision unaccompanied by an explanation).  The state court determination will be upheld so long as "fairminded jurists could disagree" on its correctness. *Yarbrough v. Alvarado*, 541 U.S. 652, 664 (2004).

### C. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. *Blackledge v. Allison*, 431 U.S. 63, 81 (1977).  This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  When construing such factual issues, the Court may neither weigh the evidence, *Anderson*, 477 U.S. at 249, nor make

determinations of credibility.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).   Rather, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production."  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).   Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial."  *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 256.   "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the Court must ask whether "the jury could reasonably find for the plaintiff."  *Id.* at 252.

## III. DISCUSSION

Petitioner submitted his objections to the Magistrate Judge's PF&R on May 8, 2020. (ECF No. 22.)   Thereafter, on June 24, 2020, Petitioner filed a motion for supplemental record, in

which he submits new evidence which he argues supports a finding of "actual innocence."   (ECF No. 23.)   The Court addresses each of these filings in turn, beginning with Petitioner's objections.

### A.   Petitioner's Objections to the PFR

Petitioner has raised four objections to the Magistrate Judge's PF&R.   First, Petitioner argues that a "state-caused impediment" should have tolled the statute of limitations under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").   (ECF No. 22 at 3–4.) Next, Petitioner argues that his 2011 resentencing should have restarted the statute of limitations under the AEDPA.   (*Id.* at 6–8.)   Petitioner also asserts that Respondent, by not raising the issue of timeliness in his Answer, has waived that argument such that it cannot serve as a basis for summary judgment.   (*Id.* at 8–10.)   Finally, Petitioner argues that because he pursued his rights of appeal with reasonable diligence, he is entitled to equitable tolling because the delays in his appeal were the result of being actively misled by the State.   (*Id.* at 10–13.)   The Court takes up each of these arguments in turn.

### 1.   Tolling of the AEDPA Statute of Limitations through a State-Caused Impediment

Petitioner's first objection asserts that a "state-caused impediment" should have tolled the statute of limitations under the AEDPA.   Petitioner argues that a "pro se petition and letter of collateral review" sent to the Circuit Court of Cabell County, West Virginia on March 19, 2007 should have tolled the AEDPA's statute of limitations.   (ECF No. 22 at 3–4.)   Yet, Petitioner asserts that only an order appointing counsel and the letter were filed.   (*Id.* at 4.)   Petitioner contends that "the State interfered by not filing his pro se petition," either through the Circuit Court Judge's failure to submit the petition or the clerk of court's failure to file the "pro se document."

(*Id.*)   These failures, according to Petitioner, created a state-caused impediment that should have tolled the statute of limitations imposed by the AEDPA.

The AEDPA establishes that a person in custody pursuant to a judgment by a state court has a one-year period in which to apply for a writ of habeas corpus.   28 U.S.C. § 2244(d)(1).   The AEDPA also provides that the one-year statute of limitations shall be tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]"   *Id.* at § 2244(d)(2).   Relevant to Petitioner's objection here, the one-year period begins to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action[.]"   *Id.* at § 2244(d)(1)(B).

Factually and procedurally, however, Petitioner's objection fails.   Petitioner contends the letter sent on March 19, 2007, and filed in the Circuit Court of Cabell County on March 27, 2007, contained a pro se petition.   It did not.   That letter reads, in its entirety, as follows:

> Your Honor,
>
> I [*sic*] pro se, My request to you is to please appoint me counsel, to process and file my state habeas corpus, and
>
> Furthermore to stop the time on the processing of my Federal habeas corpus, seeing I am without counsel.

(ECF No. 22, Appx. 2-1.)   Even a liberal reading of this letter indicates that Petitioner had not yet initiated state habeas proceedings, but rather was requesting counsel in order to initiate a habeas action.   The docket entry for this letter confirms as much.   The entry for March 27, 2007, states "Order app't Ron Salmons to rep. resp. for purposes of filing a Habeas Corpus petition on his

behalf." (*Id.*, Appx. 1-5.)   Furthermore, the request to "stop the time" on Petitioner's federal habeas corpus action was procedurally ineffective: This time is not tolled by request, but is rather automatically tolled upon the filing of a *proper petition*.   *See* 28 U.S.C. § 2244(d)(2).

This determination is further supported by the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia.   Rule 2 states that all petitions for habeas corpus relief "shall specify: (1) all the grounds for relief which are available to the petitioner; (2) a summary of the facts supporting each of the grounds specified; and (3) a specific statement of the relief requested."   W. Va. R. Habeas, R. 2.   Petitioner's letter only states that he is requesting counsel for the purpose of filing his petition and to toll the federal statute of limitations.[1]   Under the Rules Governing Post-Conviction Habeas Corpus Proceedings, Petitioner's letter was not a proper petition.   Because it was not a properly filed petition, the AEDPA statute of limitations was not tolled.   This was not a state-caused impediment, but rather a failure by Petitioner to file a proper habeas action.

For the foregoing reasons, Petitioner's objection regarding state-caused impediments and the AEDPA statute of limitations is **OVERRULED**.

    *2.  The Resentencing Order*

Next, Petitioner objects to the Magistrate Judge's conclusion that because the resentencing order here was not the result of a successful challenge to the validity of the underlying conviction or sentence, the resentencing order did not operate to restart the one-year period in which Petitioner could file a federal habeas petition.   (ECF No. 22 at 6.)   Petitioner argues that the resentencing

---

[1] Rule 2(b) of the Rules Governing Post-Conviction Habeas Corpus Proceedings also provides that if the clerk of a circuit court receives a petition that does not comply with Rule 2 requirements, the clerk may return the petition with a statement of the reason for its return.   A plain reading of Petitioner's letter supports that the clerk did not and could not consider the letter a petition, even a poorly-drafted one.

order was the result of "delays, misfilings, and poor handling of Petitioner's State appeal by the lower court[.]"   (*Id.*)   Petitioner asserts that this resentencing was not ordered "to extend the time for a habeas appeal" because "there was an extension of time order already in place."   (*Id.* at 7.)

To begin, Petitioner apparently misconstrues or conflates the nature of the "Order Extending Time to Appeal Conviction," and the resentencing order that allowed him to appeal the denial of his habeas petition in the first place.   Admittedly, the procedural history of this specific appeal is somewhat convoluted.   The resentencing order, (ECF No. 9–29), however, served to extend the statutorily-granted time in which Petitioner could file an appeal.   *See* W. Va. Code § 58-5-4 (providing four months in which to appeal a judgment).   The "Order Extending Time to Appeal Conviction," (ECF No. 22, Appx. 4-1), was made by a motion pursuant to the latter portion of § 58-5-4, which provides that judge of the circuit court may "extend or reextend" the original four-month period "for good cause shown, if the request for preparation of the transcript was made by the party seeking such appellate review within thirty days of the entry of such judgment, decree or order."   The motion for this extension, filed by Petitioner's counsel, reflects this language: "Petitioner's counsel represents to this Court that transcripts were requested in a timely manner but delivery to counsel was delayed . . . [and] that counsel has had insufficient time to prepare and perfect Petitioner's appeal."   (ECF No. 22, Appx. 4-2.)

The Magistrate Judge was correct in her assessment that the resentencing order was issued to provide a reset on the four-month period in which an appeal was to be perfected.   The order granting an extension of time merely served as a procedural device by which the original four-month period was extended.   This is further evidenced by the Index provided by the Circuit Court of Cabell County, West Virginia.   (ECF No. 22, Appx. 10-3–10-6.)   Petitioner's original Notice

of Intent to Appeal was filed on August 6, 2010.   (*Id.* at Appx. 10-3.)   From that point on, the docket is a smattering of various motions and orders to extend time until the resentencing order is reached in May 2011, well over the four-month appeal period and subsequent extensions as allowed by statute.   Petitioner did not file his Petition for Appeal from the Circuit Court until June 17, 2011, which was several weeks beyond the Order Extending Time to Appeal Conviction.   (*Id.* at Appx. 4-1.)   The resentencing order, however, reset the original four-month period to reestablish Petitioner's appellate rights regarding the Circuit Court's order denying his habeas petition.

Furthermore, and again as correctly identified by the Magistrate Judge, Petitioner's resentencing allowed Petitioner to pursue an appeal of a habeas petition, well after his direct appeal had concluded.   Courts have generally looked to the nature of the resentencing to determine whether the time period in which a petitioner may raise a challenge to his conviction restarts.   S*ee, e.g.*, *Frasch v. Peguese*, 414 F.3d 518, 522 (4th Cir. 2005) (analyzing whether proceeding employed by the petitioner was "collateral review" as opposed to "direct review" for purposes of determining whether his petition was timely); *Woodson v. Mirandy*, Civ. Action No. 2:15-16254, 2016 WL 7366956 at *6 (S.D. W. Va. Nov. 3, 2016) *report and recommendation adopted* 2016 WL 7366571 (S.D. W. Va. Dec. 19, 2016); *Daniels v. Waid*, No. 2:09-CV-00244, 2011 WL 1043490, at *3 (S.D.W. Va. Mar. 18, 2011).   If the nature of the resentencing substantively alters the sentence or otherwise calls into question the validity of the underlying conviction or sentence, courts have generally treated the resentencing as restarting this time period.   *Clement v. Ballard*, No. 2:15-CV-02320, 2015 WL 6690158, at *11 (S.D. W. Va.   Sept. 22, 2015), *report and recommendation adopted*, 2015 WL 6680893   (S.D. W. Va. Nov. 2, 2015) (finding that where an

11

amended sentencing order "*substantively* altered" the petitioner's sentence, the period of time within which the petitioner could seek direct review was reopened) (emphasis in original); *Daniels*, 2011 WL 1043490 at *3 (noting that if the petitioner was successful in challenging his sentence under habeas review, a subsequent resentence may "reopen his right to direct review"). Conversely, if the resentencing was merely procedural or unrelated to the merits of the original sentencing and the prisoner's underlying convictions, courts generally decline to extend the statutory deadline.  *See, e.g.*, *United States v. Olvera*, 775 F.3d 726, 730 (5th Cir. 2015) ("Because the sentence reduction has no impact on the finality of Olvera's conviction, his motion was untimely[.]"); *Eberle v. Warden, Mansfield Correctional Inst.*, 532 Fed. App'x 605, 610 (6th Cir. 2013) (finding that technical error in original sentence corrected in resentencing did not pertain to underlying conviction nor relate to the basis of plea bargain and therefore did not restart AEDPA statute of limitations);  *United States v. Ragin*, 460 F. App'x 282, 282–83 (4th Cir. 2012) ("The district court's amended judgment sentencing [the defendant] to time served does not affect the finality of the court's initial judgment of conviction."); *Murphy v. United States*, 634 F.3d 1303, 1309 (11th Cir. 2011) ("Therefore, a district court's reduction of a term of imprisonment . . . has no impact on the 'finality' of a defendant's 'judgment of conviction' and does not alter the 'date on which the judgment of conviction becomes final' for the purposes of the statute of limitations."); *United States v. Sanders*, 247 F.3d 139, 143 (4th Cir.2001) ("The plain text of § 3582(b) clearly states that [a later sentencing] modification does not affect the date on which [a defendant's] judgment of conviction [becomes] final 'for all other purposes.'"); *Mercer v. Ballard*, No. 2:12-CV-40, 2013 WL 1442841, at *5 (N.D.W. Va. Apr. 9, 2013) ("'However, when . . . the habeas

petition does not challenge the resentencing and only challenges his original conviction, the statute of limitations begins to run from the date that the original judgment of conviction became final.'").

Here, Petitioner's resentencing was solely to permit him more time in which to complete his appeal.  Petitioner himself recognizes this, which in effect contradicts his own argument: "[T]he W. Va. Supreme Court ordered the lower court to *re-establish Petitioner's appeal rights*. . . . The Circuit court [*sic*] resentenced Petitioner on an amended judgment on May 20, 2011[.]" (ECF No. 22 at 11 (emphasis added).)

For the foregoing reasons, Petitioner's objection as to the nature of his resentencing order is **OVERRULED**.

### 3.   *Waiver of Untimeliness Argument by the State*

Petitioner next argues that the State has waived its argument as to untimeliness because it failed to raise the issue in its Answer.  (ECF No. 22 at 9.)  Further, Petitioner argues that the Magistrate Judge abused her discretion because she "ignore[d] the pro se collateral attack; the compliance with W. Va. Rules Governing Post-conviction habeas proceedings; and the [*sic*] concedes of the State's judgment not to argue, accepting the statutory tolling."  (*Id.*)

Petitioner is mistaken on this argument.  First, the Ninth Circuit decision upon which Petitioner relies does not support his position.  In *Sossa v. Diaz*, the petitioner argued that he relied on a magistrate judge's extension of time to file his habeas petition such that he was entitled to equitable tolling of the statute of limitations.  729 F.3d 1225, 1230 (9th Cir. 2013).  While timeliness was indirectly at issue, the heart of that dispute was whether the petitioner had been misled by the magistrate judge's opinion.  *Id.*  Furthermore, as to the issue of timeliness, the Ninth Circuit stated, "[n]onetheless, the district court could have raised the statute of limitations

13

issue *sua sponte*, and therefore the State's untimely motion is of no consequence in this case." *Id.* at 1230, n.4. Even if Petitioner was correct in *Sossa*'s holding and application to the matter before the Court, the Court could still raise the timeliness of his petition *sua sponte*.

Regardless, Petitioner is incorrect that the State waived the argument on timeliness and his argument is without merit. In his Answer, Respondent clearly raises the issue of timeliness: "As discussed in the contemporaneously filed Memorandum in Support of Motion for Summary Judgment, Petitioner's § 2254 Petition appears is [*sic*] untimely and should be dismissed pursuant to 28 U.S.C. § 2244(d)." (ECF No. 11 at 1.) Of course, Respondent clearly argued that the statute of limitation had expired in the motion for summary judgment. (*See* ECF No. 14 at 13–16.) Moreover, the Court itself has the authority to raise timeliness *sua sponte*. *See Gleason v. Janice*, No. 3:13-CV-61, 2013 WL 5724066, at *4 (N.D. W. Va. Oct. 21, 2013) ("The statute of limitations is an affirmative defense, but may also be raised by the Court *sua sponte*[.]") (citing *Day v. McDonough*, 547 U.S. 198 (2006)).

Petitioner appears to take issue with Respondent's argument as to untimeliness itself. Petitioner states as follows:

> The critical assessment of the credibility contest against Petitioner shifts the burden by the Magistrate judge [*sic*] without allowing an evidentiary hearing. The State made a strategical decision to argue from the period of resentencing order and conceded to the proper filing of Petitioner's pro se petition.

(ECF No. 22 at 9.) Petitioner then cites to Respondent's argument that his petition is untimely, which, again, is raised directly in Respondent's answer to the petition. Regardless, even if the date of the resentencing order is used, Petitioner's petition would still be untimely, as will be

14

detailed in the next section.   Here, however, because Respondent clearly raised the issue of timeliness in his answer, Petitioner's objection is without merit.[2]   (*See* ECF No. 11 at 1.)

For the foregoing reasons, Petitioner's objection as to the nature of his resentencing order is **OVERRULED**.

### 4. *Equitable Tolling*

Petitioner's last objection is to the Magistrate Judge's finding that his petition was untimely.   (ECF No. 22 at 12.)   Petitioner asserts that the delay in filing was due not to his lack of diligence but rather to the "State clerk actively misle[ading] Petitioner with the wrong information concerning the status of his State appeal."   (*Id.* at 13.)   Petitioner adds that a "state-created impediment" also contributed to this delay because the court failed to notify his counsel, himself, and even the state attorney of the resentencing order.   (*Id.* at 11–12.)   Because of these "undisputed" failures, (*see id.* at 13), Petitioner asserts that he is entitled to equitable tolling.   (*Id.*)

Petitioner again raises the argument that his March 21, 2007 letter served as his pro se habeas petition and that this petition was never filed.   (*Id.* at 11.)   As the Court has already addressed, this letter did not constitute a properly-filed habeas petition, and therefore did not function to toll the statute of limitations under the AEDPA.   Therefore, the time period in which Petitioner could have filed a federal habeas petition expired on June 4, 2007.   Beyond arguing that his letter constitutes a habeas petition for the purposes of tolling the statute of limitations, Petitioner does not appear to offer further arguments as to why he should be entitled to equitable

---

[2] As a final note, Petitioner is not automatically entitled to an evidentiary hearing.   Under Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, the presiding judge retains discretion to determine whether a hearing is warranted if the petition is not dismissed.   *See Maynard v. Dixon*, 943 F.2d 407, 411–12 (4th Cir. 1991).   *See also Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).   Petitioner has failed to demonstrate a factual dispute such that a hearing would be necessary.   *See Maynard*, 943 F.2d at 412.

tolling as to the June 4, 2007 deadline. Instead, Petitioner focuses his attention on the May 2011 resentencing order.

Petitioner asserts that neither he nor his counsel was notified of his 2011 resentencing, which he again maintains restarted the AEDPA statute of limitations. In support of this argument, Petitioner submits correspondence between himself and his former counsel—now a judge in the Tenth Family Court Circuit of West Virginia—from 2019. (*Id.* at Appxs. 8, 9.) Notably, this correspondence does not establish that Petitioner or his former counsel were not notified of the resentencing order. Instead, Petitioner states that he has "no recollection" of the resentencing order and asks his former counsel to provide an affidavit stating that notification was not delivered. (*Id.* at Appx. 8–3.) Petitioner's former counsel responded that he was "unable to recall details" of Petitioner's case, would be unable to assist Petitioner on his current claims, and would not answer any further correspondence based on his judgeship. (*Id.* at Appx. 8–1.)

Petitioner argues that the Clerk of Court for Cabell County failed to notify him of this resentencing order. (*Id.* at 12.) In support of this argument, Petitioner attaches a letter from the Clerk. (*Id.* at Appx. 9.) The letter from the Clerk, similar to Petitioner's correspondence with his former counsel, does not advance Petitioner's cause. The Clerk responded to Petitioner as follows:

> In the last line of the order it directs the clerk's office to send certified copies of the order to ALL counsel of record. Attached to the order are FAX confirmation sheets where the order was sent to the facilities where you were being held as well as WV Department of Corrections. The order was sent to your attorney by first class mail and we do not have a notation in your file where it was returned to us because they couldn't deliver it to him. There was no directive to send you a copy.

(*Id.* (emphasis in original).) Petitioner did not attach the fax confirmation sheets or any notification that delivery of the order to his counsel had failed. Instead, he asserts that the

"mailing stamp" affixed to the corner of the Clerk's copy of the order shows that it was not mailed. (*Id.* at 12.)   Petitioner further asserts that the index sheet only shows an entry for an order "extending time" on May 20, 2011, and not a resentencing order.   (*Id.* at 12; Appx. 10–6.)

The AEDPA statute of limitations may be equitably tolled in limited circumstances. *Holland v. Florida*, 560 U.S. 631 (2010).   To show his entitlement to equitable tolling, a petitioner must generally show "(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way and prevented timely filing."   *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).   The Fourth Circuit has explained that equitable tolling should apply as follows:

> We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 20000).

Petitioner, however, does not satisfy either prong of the above analysis.   First, while Petitioner maintains that he was reasonably diligent in pursuing his right to appeal his conviction, Petitioner fails to explain how a nearly 12-year delay in filing his federal petition is reasonable or how any of the alleged failures to notify would constitute extraordinary circumstances that prevented his timely filing.   In particular, Petitioner focuses on the May 2011 resentencing order and the alleged failure-to-provide-notice by the clerk of the circuit court.   Yet, in making this argument, Petitioner seemingly ignores the procedural timeline following the entries of the Order Extending Time to Appeal Conviction and the resentencing order, which practically undermines his own argument.   As already detailed, the Order Extending Time to Appeal Conviction extended the time in which to perfect his appeal to May 31, 2011.   (*Id.* at Appx. 4–1.)   Petitioner's appeal,

17

however, was not filed until June 17, 2011, which itself would have been untimely if made pursuant to the Order Extending Time.   (ECF No. 19 at 6.)   Instead, the appeal was timely filed because of the resentencing order, which reestablished Petitioner's appellate rights on his state habeas petition.   Thus, it becomes difficult to see how Petitioner or his counsel lacked notice of a resentencing, when his habeas appeal was filed pursuant to the newly reestablished deadline set by his 2011 resentencing.

Still, Petitioner's argument fails to explain how an alleged failure to notify in May 2011— already nearly five years past the expiration of his federal habeas rights—would entitle him to equitable tolling for eight years, all the while his first state habeas appeal was litigated and while he proceeded with a second state habeas petition.   Even if this Court were to accept that the resentencing order restarted the statute of limitations under the AEDPA, Petitioner's habeas was denied on March 7, 2014, nearly three years after the resentencing.   (ECF No. 9–39 at 2.)   Petitioner was notified of this final decision on his habeas petition on April 9, 2014.   (ECF Nos. 6–10 at 2; 17–4 at 59–60.)   Petitioner did not take any further action until 2017, when he initiated his second habeas petition in the Circuit Court on May 18.   (ECF No. 9–41 at 6.)   The instant federal petition was not filed until June 21, 2019.   (ECF No. 2 at 16.)   Therefore, even if this Court assumes that the resentencing order did restart the statute of limitations under the AEDPA, and even if the Court further assumes as true that Petitioner did not receive notice of his May 2011 resentencing order, Petitioner has still failed to explain how either of those two events would have prevented him from timely filing the instant petition between the period of April 8, 2014, and April 7, 2015, when the statute of limitations under the AEDPA would have expired, or why he waited until 2019 to file his federal habeas.   Not only does this demonstrate a lack of diligence on

18

Petitioner's part, it also fails to explain how an extraordinary circumstance prevented him from timely filing his petition.   Simply, Petitioner's objection is without merit.

For the foregoing reasons, Petitioner's objection as to his entitlement to equitable tolling of the statute of limitations under the AEDPA is **OVERRULED**.

### B. *Petitioner's Motion for Supplemental Record*

On June 24, 2020, Petitioner filed a Motion for Supplemental Record.   (ECF No. 23.)   In this motion, Petitioner requests that the Court supplement the record for Petitioner's habeas corpus petition with an affidavit provided by a witness who had testified against Petitioner at his trial. (*Id.* at 2.)   Petitioner asserts that the affidavit, which outlines a witness "under the threat of the Prosecuting attorney" providing false testimony, introduces evidence that the false testimony was so critical to the State's case that without it "no reasonable jury would have convicted [Petitioner] of this crime."   (*Id.*)

Pursuant to an order by this Court, Respondent responded to Petitioner's motion.   (ECF No. 25.)   Respondent argues that the Court should deny Petitioner's motion because Petitioner cannot establish actual innocence based on this affidavit.   (*Id.* at 5.)   Furthermore, Respondent advises the Court that other courts have viewed recantations of testimony with suspicion.   (*Id.* at 3–4, n.1.)   Regardless, Respondent contends that even absent this evidence, numerous other witnesses testified at trial, including an eyewitness to the shooting, such that Petitioner cannot establish "actual innocence."   (*Id.* at 4–5.)

The Supreme Court of the United States has recognized a limited actual innocence exception to otherwise procedurally barred claims.   *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).   "[I]n an extraordinary case, where a constitutional violation has probably resulted in the

conviction of one who is actually innocent, a federal habeas court may grant the writ [of habeas corpus] even in the absence of a showing of cause for the procedural default." *Id.* "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This standard requires a greater showing than simply establishing prejudice. *Id.*

This standard ensures that a "petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." *Id.* (internal citations omitted). A claim of actual innocence "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The Supreme Court extended the actual innocence exception to overcome the untimeliness of a petition under the habeas statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* . . . or, as in this case, expiration of the statute of limitations.").

Petitioner's motion relies on "newly discovered" evidence in the form of an affidavit from the State's witness, Virginia Heffner, née Bias ("Heffner"), purporting to recant her testimony that Petitioner had told her he had shot and killed someone. (ECF No. 23–1.) Heffner is Petitioner's ex-wife. (*Id.* at ¶ 1.) Heffner states that on or about 2:00 a.m. on January 3, 2003, Petitioner arrived at her home because he needed to speak with her. (*Id.* at ¶ 2.) Heffner states that she "could tell something was wrong with him and that he had been drinking." (*Id.*) Petitioner then asked Heffner if she had "watched the news or anything," to which Heffner replied that she had

not because she was not feeling well and had been at the hospital.   (*Id.* at ¶ 3.)   Heffner asserts that Petitioner then said, "I think… I… someone was shot because of me and they are dead."   (*Id.* at ¶ 4.)   Petitioner left a few hours later.   (*Id.* at ¶ 5.)

Later that day, Heffner contacted a family friend who, to her knowledge, was "inactive from the Huntington Police Department," and told this individual that she thought "[Petitioner] had shot someone."   (*Id.* at ¶ 6.)   This individual told her to contact the police.   (*Id.*)   Heffner was interviewed by a detective after placing the call to the police.   (*Id.* at ¶¶ 6–7.)   Heffner told the detective that Petitioner had "insinuated" that he had been involved in a shooting.   (*Id.* at ¶ 7.) The detective asked Heffner what Petitioner had told her, and she responded that "[Petitioner] said someone had gotten shot and that they were dead."   (*Id.*)   The detective asked her again, and Heffner responded that Petitioner said he had "shot someone and they are dead."   (*Id.*)

Heffner told both the detective and the prosecuting attorney that she did not want to testify. (*Id.* at ¶ 8.)   Heffner states that she was not sure what Petitioner had said, and she tried to contact Petitioner's attorney to inform him that her statement to police "wasn't right."   (*Id.* at ¶¶ 8, 10.) She further states that she tried to ignore calls from the Prosecutor's office.   (*Id.* at ¶ 10.) However, on March 11, 2004, the Prosecutor's office contacted her again, and she told the office that she did not want to testify because "[she] did not believe the statements [she] made were true." (*Id.* at ¶ 11.)   Heffner asserts that, in response, the Prosecutor told her that she would be incarcerated and her daughter taken away from her if she refused to testify.   (*Id.*)

Then, on March 12, 2004, officers from the Huntington police department served Heffner a subpoena and threatened to "lock her up" if Heffner refused to testify.   (*Id.* at ¶ 12.)   Under "Police [*sic*] escort," Heffner testified against Petitioner as to the previous statement she had given

detectives.   (*Id.*)   Heffner states that she had been "afraid and angry" towards Petitioner and that testifying against him "was a way [she] could get even with him and out of my life for good." (*Id.*)   Heffner says she was not truthful.   (*Id.*)   Heffner further states that, through therapy, she was encouraged to forgive herself and to seek forgiveness from others she had hurt, which is why "[she] felt [she] had to write this affidavit."   (*Id.*)

Petitioner's motion fails because he cannot establish that the recantation of Heffner's testimony, even if accepted as true, would be sufficient to show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."   *Schlup*, 513 U.S. at 327.   In this case, Heffner's recantation of testimony consists of retracting "Petitioner said he shot someone," and instead asserting "Petitioner said someone was shot because of him."   (ECF No. 23–1 at ¶ 4.)   This cannot be said to be an exceptional change of circumstance or an extraordinary change of position.   Moreover, this recantation comes over 16 years after the trial and is brought by someone with whom the Petitioner has had a close, personal relationship.[3] Finally, the Court notes that, on cross-examination, Heffner stated that Petitioner had never told her that he shot someone.   (ECF No. 9–4 at 137.)   Considering this admission during the actual trial, the Court can hardly call Heffner's affidavit a recantation at all.

Still, even if the Court accepts the affidavit, then accepting Petitioner's argument would summarily discard the other evidence upon which the jury could have reasonably concluded that

---

[3] Furthermore, post-trial recantations of testimony are "looked upon with utmost suspicion."   *United States v. Johnson*, 487 F.2d 1278, 1279 (4th Cir. 1973).   Suspicion appears to be warranted in this case.   A review of the trial transcript reveals several instances of domestic violence in which Petitioner allegedly threatened Heffner with a firearm, and even suggestions by Petitioner that Heffner should not testify.   (ECF No. 9–4 at 107–09, 130–31.) Additionally, some behavior from observers within the courtroom prompted Judge Ferguson to issue a warning from the bench to not intimidate witnesses, "[Heffner] especially."   (*Id.* at 115.)   While the Court does not outright disregard this recantation, it remains leery of the circumstances surrounding this witness and the recantation.   *See Johnson*, 487 F.2d at 1279 ("Where the circumstances surrounding the recantation suggest it is the result of coercion, bribery, or misdealing the district court is justified in disregarding it.")

Petitioner was guilty of the alleged crime, including testimony of an eyewitness to the shooting

that identified Petitioner as the shooter.   Again, establishing "actual innocence" means a petitioner

showing "that it is more likely than not that no reasonable juror would have convicted him in the

light of the new evidence."   *Schlup*, 513 U.S. at 327.   For example, State witness Shawn Elmore

testified as follows:

> Q:      Okay.   Now, did anything happen as you come across that curve – around
> that corner at the Bazaar?
>
> A:      Yeah.   I seen [*sic*] [Petitioner].   He was walking in front of us and he
> turned and pulled a black revolver out of his top of his outfit he had on and started
> shooting.

(ECF No. 9–4 at 154.)   Beyond this positive identification of the Petitioner—in the midst of

committing the crime—prosecutors also presented evidence to the jury of the Petitioner appearing

at the bar near where the shooting took place and being involved in an altercation with the bouncers

outside of the establishment, (ECF No. 9–3 at 123); a previous altercation involving the victim and

Petitioner, (ECF No. 9–4 at 99); witnesses hearing gunshots, (ECF No. 9–3 at 128, ECF No. 9–4

at 156); an acquaintance of Petitioner contacting him because of the victim's presence at the bar,

as well as others with whom Petitioner had fought in the previous altercation, (ECF No. 9–3 at

145–46); an apparent apology from the Petitioner to his acquaintance for shooting while

Petitioner's acquaintance was on the scene, (*Id.* at 172);[4] and numerous ballistic, medical, and

crime scene reports from the professionals and law enforcement officers working the case.   (*See*

*generally* ECF No. 9–3.)

---

[4] At trial, there was considerable debate between the prosecution and the defense as to the precise meaning of this apology.   (*See* ECF No. 9–3 at 150–61.)   Regardless, this is simply another piece in a long list of evidence for the jury to consider.

This is not an "extraordinary" case. *See Schlup*, 513 U.S. at 327. The recantation presented by Heffner is hardly a recantation at all, and merely confirms an admission which the defense garnered during trial. In fact, this recantation does not change anything substantively, and it has no effect on the remaining evidence, as demonstrated above. Furthermore, even if this recantation were accepted, it is not of the sort where Petitioner can "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* Heffner's Affidavit simply cannot support Petitioner's claim of actual innocence.

For the foregoing reasons, Petitioner's Motion for Supplemental Record, (ECF No. 23), is **DENIED**.

## *IV. CONCLUSION*

Accordingly, the Court **DENIES** Petitioner's Motion for Supplemental Record, (ECF No. 23); **OVERRULES** Petitioner's objections, (ECF No. 22); **ADOPTS** the PF&R, (ECF No. 19); **GRANTS** Respondent's Motion for Summary Judgment, (ECF No. 9); **DENIES** Petitioner's Amended Petition for a Writ of Habeas Corpus, (ECF No. 2); and **DISMISSES** this action from the docket of the Court. The Court **DIRECTS** the Clerk to remove this case from the Court's active docket.

The Court has also considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will be granted only if there is "a substantial showing of the denial of a constitutional right." § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *See Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 437, 484 (2000); *Rose*

24

*v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001).   Because Petitioner has not made a substantial showing of the denial of a constitutional right in the § 2254 Petition and objections to the PF&R, the Court **DENIES** a certificate of appealability.   Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2254, Petitioner may not appeal the Court's denial of a certificate of appealability, but he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

   **IT IS SO ORDERED**.

   The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:   September 29, 2020

                        _____

             THOMAS E. JOHNSTON, CHIEF JUDGE

25